COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Alston and Senior Judge Annunziata
Argued at Richmond, Virginia


CHRISTOPHER Y. PERSON
                                                                    OPINION BY
v.        Record No. 1598-11-2                          JUDGE ROSSIE D. ALSTON, JR.
                                                                    AUGUST 7, 2012
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF SURRY COUNTY
                                Samuel Campbell, Judge

              (Bradley P. Butterworth, on briefs), for appellant.  Appellant
              submitting on briefs.

              Rosemary V. Bourne, Assistant Attorney General (Kenneth T.
              Cuccinelli, II, Attorney General, on brief), for appellee.


        Christopher Y. Person (defendant) appeals his conviction for use of a sawed-off shotgun

in the commission of a crime of violence in violation of Code § 18.2-300.  In this appeal,

defendant contends that the evidence was insufficient to prove that the weapon used met the

statutory definition of "sawed-off shotgun" under Code § 18.2-299.  Finding no error, we affirm

defendant's conviction.

                                        I.  Background

        "When examining a challenge to the sufficiency of the evidence, an appellate court must

review the evidence in the light most favorable to the prevailing party at trial and consider any

reasonable inferences from the facts proved."  Viney v. Commonwealth, 269 Va. 296, 299, 609

S.E.2d 26, 28 (2005) (citing Zimmerman v. Commonwealth, 266 Va. 384, 386, 585 S.E.2d 538,

539 (2003)).

So viewed, the evidence indicated that defendant, Deon Walker, Raymond Moore, and Bobby Hill decided to rob the players at a poker game taking place at a residence in Surry County on May 22, 2010. When the men arrived at the residence, Walker, Hill, and defendant left Moore in the car parked "down a little path" nearby the residence. According to Hill, defendant was carrying a "sawed-off shotgun" that night.

Sometime between midnight and 1:00 a.m., Hill entered the residence and joined Nancy Overton, Daneen Overton, and Rantavis Evans to play cards. Defendant and Walker entered the house forty-five minutes later, clad in masks and carrying guns. During the course of the robbery, Evans shot and killed Walker. Defendant left the residence and returned to the car, where he told Moore to "drive." Moore saw defendant with a "sawed-off shotgun" and observed defendant bury the gun in the ground.

Later that morning, Officer William Thomas of the Surry County Sheriff's Department interviewed Moore regarding the robbery. Moore initially told Officer Thomas that defendant had disposed of the gun at a stop sign after the men left the residence. However, after Officer Thomas checked stop signs near the residence and did not find the gun, Moore told Officer Thomas that the gun was at "the old L.P. Jackson school site," approximately 125 yards from the residence.

Using a tracking dog, Officer Thomas found the gun at the school, buried under a pile of sand and rocks. The gun was wrapped in a piece of camouflage cloth from a jacket with Walker's name tag. At trial, Officer Thomas described the gun he recovered wrapped in the cloth with Walker's name tag on it as a "sawed-off shotgun."

Defendant was indicted for burglary in violation of Code § 18.2-89, robbery in violation of Code § 18.2-58, wearing a mask to conceal his identity in violation of Code § 18.2-422, use of a sawed-off shotgun while committing armed robbery after having been previously convicted of

a similar violation of Code § 18.2-53.1, and use of a sawed-off shotgun in the commission of a crime of violence in violation of Code § 18.2-300.

At trial, the Commonwealth presented the testimony of Moore, Nancy Overton, Officer Thomas, and Hill. The Commonwealth also introduced a picture[1] of the gun recovered by Officer Thomas as well as the gun itself into evidence. At the conclusion of the Commonwealth's evidence, defendant moved to strike, arguing that the Commonwealth had failed to prove that the gun in question met the definition of "sawed-off shotgun" under Code § 18.2-299. The trial court denied the motion, stating that it "personally observed the shotgun" and identified it as a "Remington 1100 sawed-off shotgun," although the trial court noted that it "couldn't tell the gauge because the barrel was missing." Defendant presented no evidence, rested his case, and renewed his motion to strike. The trial court again denied the motion.

Defendant then filed a written motion to strike, raising the same argument. Following consideration of jury instructions, the trial court considered defendant's motion and once again denied it. The trial court stated that the weapon was introduced into evidence and seen by the jury and that the jury could "make a determination whether or not it was a sawed[-]off shotgun."

---

[1] The picture of the gun admitted into evidence at trial is reproduced here for illustrative purposes.



The trial court then instructed the jury regarding the statutory definition of "sawed-off shotgun."  The instruction stated:

> A "sawed-off" shotgun is any weapon, loaded or unloaded, originally designated as a shoulder weapon, utilizing a self-contained cartridge from which a number of ball shot pellets or projectiles may be fired simultaneously from a smooth or rifle bore by a single function of the firing device and which has a barrel length of less than eighteen (18) inches for smooth bore weapons and sixteen (16) inches for rifled weapons.  A weapon of less than .225 caliber is not a sawed-off shotgun.

After deliberation, the jury found defendant guilty of burglary, robbery, wearing a mask to conceal his identity, and use of a sawed-off shotgun in the commission of a crime of violence. The trial court sentenced defendant to a total of 46 years' imprisonment.  This appeal followed.[2]

## II.  Analysis

On appeal, defendant alleges the evidence was insufficient to prove the gun introduced into evidence met the statutory definition of "sawed-off shotgun" in Code § 18.2-299.

Code § 18.2-300(A) provides:  "Possession or use of a 'sawed-off' shotgun or 'sawed-off' rifle in the perpetration or attempted perpetration of a crime of violence is a Class 2 felony."  Code § 18.2-299 defines "sawed-off shotgun" as

> any weapon, loaded or unloaded, originally designed as a shoulder weapon, utilizing a self-contained cartridge from which a number of ball shot pellets or projectiles may be fired simultaneously from a smooth or rifled bore by a single function of the firing device and which has a barrel length of less than 18 inches for smooth bore weapons and 16 inches for rifled weapons. Weapons of less than .225 caliber shall not be included.

_____

[2] Defendant's petition for appeal was granted in part and denied in part by a judge of this Court.  The sufficiency of the evidence in support of defendant's conviction for use of a sawed-off shotgun in the commission of a crime of violence is the only assignment of error before us in this appeal.  Assignments of error regarding a witness' identification of defendant, the Commonwealth's alleged failure to disclose a confession or admission made by defendant, and a double jeopardy claim were previously denied by a per curiam decision of this Court.

"Whether [a] weapon met the statutory definition [of a sawed-off shotgun] was a factual issue for the jury to decide." Bruce v. Commonwealth, 9 Va. App. 298, 301, 387 S.E.2d 279, 280 (1990). Accordingly, this determination "shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680.

Reference to the case of Taylor v. Commonwealth, 10 Va. App. 260, 391 S.E.2d 592 (1990), is helpful to the resolution of the issue presented in this appeal. In Taylor, the defendant was convicted in a bench trial of possession of a sawed-off shotgun in violation of Code § 18.2-300(B). Id. at 262, 391 S.E.2d at 593. On appeal, Taylor argued that the evidence was insufficient to prove that the weapon was a sawed-off shotgun within the statutory definition. Id. This Court affirmed, holding that the evidence was sufficient. We noted,

> [T]he gun was admitted into evidence as Commonwealth's exhibit number one. The trial court, as the trier of fact, stated that "the gun speaks for itself," and that "it's a .20 gauge shotgun and a shotgun shoots shells. It's been cut here, the barrel has been cut off, it's less than the prescribed length."

Id. at 269, 391 S.E.2d at 597.

As the Supreme Court of Virginia and this Court have repeatedly stated, "'[a] jury is presumed to have followed the instructions of the trial court.'" Prieto v. Commonwealth, 283 Va. 149, 169, 721 S.E.2d 484, 496 (2012) (quoting Muhammad v. Commonwealth, 269 Va. 451, 524, 619 S.E.2d 16, 58 (2005)); see also Hsiu Tsai v. Commonwealth, 51 Va. App. 649, 653, 659 S.E.2d 594, 595 (2008). Moreover, "[jurors] may make use of their reason and common sense, and the knowledge and experience gained by them in everyday life." Charles E. Friend, The Law of Evidence in Virginia § 19-20 (6th ed. 2003) (citing Troutner v. Commonwealth, 135 Va. 750, 755, 115 S.E. 693, 694 (1923); Thurpin v. Commonwealth, 147 Va. 709, 715, 137 S.E. 528, 530 (1927) (allowing jurors to employ their sense of smell in a case involving whiskey)).

The gun in this case was admitted into evidence. The trial court properly instructed the jury on the definition of "sawed-off shotgun" under the statute. The statutory definition of "sawed-off shotgun" cited in the instruction required the jury to determine both the barrel length of a weapon and that the weapon was .225 caliber or greater,[3] among other specifications. Using their reason, common sense, knowledge, and experience, the jury could determine from examining the gun whether it met the statutory definition, and, in finding defendant guilty, the jury necessarily determined that it did. Because the gun was admitted into evidence, it was not an evidentiary prerequisite for the Commonwealth to present testimony regarding the gun's characteristics in order for the jury to reach this conclusion. Moreover, the jury's determination was not plainly wrong or without evidence to support it. Therefore, we affirm the judgment of the trial court.

<u>Affirmed.</u>

---

[3] "'Caliber' is defined as 'the diameter of a bore of a gun usually expressed in modern U.S. and British usage in hundredths or thousandths of an inch and typically written as a decimal fraction.'" <u>Dillard v. Commonwealth</u>, 28 Va. App. 340, 347 n.1, 504 S.E.2d 411, 414 n.1 (1998) (quoting <u>Webster's New Collegiate Dictionary</u> 157 (1977)). Thus, the diameter of the bore of a gun with a .225 caliber is .225 inches. Notably, the jury in the instant case was not required to determine the exact caliber of the gun at issue, but only that it was .225 caliber *or greater.*